# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SANDRA M. MUSONERA
    Plaintiff,

v.                                                            **Case No. 18-C-1852**

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration**
    **Defendant.**

## DECISION AND ORDER

An Administrative Law Judge ("ALJ") denied plaintiff Sandra Musonera's application for social security disability benefits. (Tr. at 252-62.) The ALJ determined that plaintiff suffered from a number of severe impairments, including degenerative disc disease, obesity, and hip dysplasia. However, he concluded that the record contained insufficient evidence that plaintiff's alleged fibromyalgia (see Tr. at 280, 459) constituted a medically determinable impairment (Tr. at 255).[1] The ALJ then determined that plaintiff's allegations of disabling pain and other symptoms were inconsistent with the available medical and other evidence of record (Tr. at 258), and that she retained the ability to perform a range of sedentary work (Tr. at 257), consistent with her previous employment as a human resources assistant and collections clerk (Tr. at 260).

---

[1] Fibromyalgia is a rheumatic disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues. Williams v. Colvin, 757 F.3d 610, 612 (7th Cir. 2014). Since the condition cannot be measured with standard objective testing, diagnosing it can be a challenge, see, e.g., Vanprooyen v. Berryhill, 864 F.3d 567, 572 (7th Cir. 2017), as can be its evaluation as a disabling impairment under social security law, e.g., Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir. 1996); see also Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009) ("[T]he ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it.").

Plaintiff sought review by the Appeals Council ("AC"), submitting an article about fibromyalgia (Tr. at 314-26), additional medical records (Tr. at 15-248), and a medical source report from her treating physician indicating that she met the criteria for fibromyalgia (Tr. at 11-14.) The AC denied review, stating: "You submitted reasons that you disagree with the decision. We considered these reasons and exhibited them on the enclosed Order of the Appeals Council. We found that the reasons do not provide a basis for changing the Administrative Law Judge's decision." (Tr. at 1.) Regarding the additional evidence, the Council stated:

> You submitted an article by Helen Cohen, dated 2017 (13 pages). This evidence is not material because it is not relevant to your claim for disability. We did not exhibit this evidence.
>
> You also submitted a medical source statement from Virginia Wilson, M.D., dated March 7, 2018 (4 pages) and records from SSM Health DMG Beaver Dam, dated November 16, 2015 through January 25, 2018 (233 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

(Tr. at 2.) The Order and Exhibits List referenced plaintiff's request for review and her representative's supporting brief but not the additional evidence. (Tr. at 5-6.)

Plaintiff now seeks judicial review, arguing that the ALJ erred in evaluating her fibromyalgia, her statements regarding her symptoms, and the opinion evidence, including reports from Rene Gellings, PA-C, her primary treatment provider, suggesting greater limitations. Plaintiff further argues that the AC erred in its consideration of the new medical evidence. Logically, it makes sense to start with plaintiff's final argument, for if the matter is remanded on that ground the agency will be required to reevaluate the existence and severity of plaintiff's fibromyalgia, the credibility of her statements regarding her pain and limitations, and the opinion evidence based on a fortified record (including a new treating source report).

2

## I. REVIEW OF AC ORDERS

Ordinarily, when the AC denies review, the court evaluates the ALJ's decision as the final word of the Commissioner. E.g., Jozefyk v. Berryhill, 923 F.3d 492, 496 (7th Cir. 2019). If, however, the Council denies review despite the submission of additional evidence in support of the application, a claimant may be able to obtain judicial review of the denial, depending on the grounds upon which the Council declined review. See Stepp v. Colvin, 795 F.3d 711, 722 (7th Cir. 2015).

If the AC determined that the claimant's additional evidence was not "new and material," as required by the applicable regulation, see 20 C.F.R. § 404.970, the court retains jurisdiction to review that conclusion for legal error. Stepp, 795 F.3d at 722 (citing Farrell v. Astrue, 692 F.3d 767, 771 (7th Cir. 2012)). If, on the other hand, the AC deemed the evidence new, material, and time-relevant ("qualifying" under the regulation) but then denied review in the exercise of discretion based on its conclusion that the record—as supplemented—did not demonstrate the ALJ's decision was contrary to the weight of the evidence, that decision is unreviewable. Id. (citing Perkins v. Chater, 107 F.3d 1290, 1294 (7th Cir. 1997)).[2]

---

[2] One court described the AC review process as involving three steps. At step one, the Council determines whether the additional evidence is new, material, and relates to the period at issue, i.e., is "qualifying" evidence under the regulation. If not, the AC prepares a denial notice and does not exhibit the additional evidence. If the AC finds that the additional evidence is qualifying, it proceeds to step two, evaluating the entire record to determine whether the ALJ's decision is contrary to the weight of the evidence currently of record (i.e., the record before the ALJ plus the additional evidence). If the ALJ's decision is not contrary to the weight of evidence currently of record, the AC denies review. If, on the other hand, the ALJ's decision is contrary to the weight of evidence currently of record, the AC proceeds to step three, undertaking a complete review of the entire case. Brown v. Colvin, No. 1:14-cv-01797-JMS-MJD, 2015 U.S. Dist. LEXIS 81093, at *32-34 (S.D. Ind. June 3, 2015), adopted, 2015 U.S. Dist. LEXIS 80830 (S.D. Ind. June 22, 2015). Under this formula, only step one would be subject to judicial review. Id. at *36.

Drawing this distinction can be challenging. New evidence is "material" if there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered. Id. at 725 (citing Perkins, 107 F.3d at 1296); see also Nelson v. Bowen, 855 F.2d 503, 506 (7th Cir. 1988). "To evaluate that standard of materiality, the reviewing court must examine the newly submitted evidence and compare it with the ALJ's rationale for denying benefits." Teresa F. v. Saul, No. 1:18-cv-01967-JRS-MPB, 2019 U.S. Dist. LEXIS 113380, at *21-22 (S.D. Ind. July 9, 2019). In some cases, the court may be able to make a materiality determination without weighing the evidence as would a front-line fact-finder. Id. at *22. In Farrell, for instance, the ALJ in denying the claim determined "that 'there is no evidence that [a fibromyalgia] diagnosis has been confirmed.'" 692 F.3d at 771. The court remanded where the new evidence—a report confirming the claimant's fibromyalgia diagnosis—filled "an evidentiary gap by providing exactly that confirmation." 692 F.3d at 771. Because the ALJ relied on "the absence of a diagnosis and the newly submitted evidence obliterated that rationale, the evidence was material." Teresa F., 2019 U.S. Dist. LEXIS 113380, at *22. In other cases, however, "an evaluation of materiality can involve a rather extensive review of the evidence that includes a rigorous comparison of the newly submitted evidence and the existing evidence, which only falls short of weighing the evidence by not reaching any specific conclusion about the weight that should be given conflicting evidence." Id. at *22-23 (citing Nelson, 855 F.2d at 507-08 (containing a lengthy discussion of the new evidence)).

Further complicating matters, the AC frequently uses opaque language, which makes it difficult for the court to determine the basis for its decision. See, e.g., Stepp, 795 F.3d at 725 (referring to the AC's "abstruse signals"); Farrell, 692 F.3d at 771 (collecting cases). In Farrell,

4

for instance, the Council stated that it "considered . . . the additional evidence . . . [and] found that this information does not provide a basis for changing the Administrative Law Judge's decision." Id. The Seventh Circuit noted that this language "might indicate that the Appeals Council found the proffered new evidence to be immaterial, but on the other hand it might indicate that the Council accepted the evidence as material but found it insufficient to require a different result." Id.

Finally, the agency recently revised the applicable regulation, which now indicates the AC will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).[3] At the time Stepp was decided, the regulation stated:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b) (1987); Steven S.A. v. Comm'r of Soc. Sec., No. 17-cv-819-CJP, 2018 U.S. Dist. LEXIS 119178, at *15-16 (S.D. Ill. July 18, 2018); see Stepp, 795 F.3d at 721. As

---

[3]Under the revised regulation, the claimant must also show "good cause" for not submitting the evidence sooner. 20 C.F.R. § 404.970(b). Finally, the revised regulation provides: "If you submit additional evidence that does not relate to the period on or before the date of the administrative law judge hearing decision as required in paragraph (a)(5) of this section, or the Appeals Council does not find you had good cause for missing the deadline to submit the evidence in § 404.935, the Appeals Council will send you a notice that explains why it did not accept the additional evidence and advises you of your right to file a new application." 20 C.F.R. § 404.970(c).

5

one judge recently noted:

> The revised regulation jettisons any explicit reference to the Appeals Council comparing the ALJ's decision against the weight of the evidence as part of its determination to grant review. Instead, the regulation explicitly incorporates the language used by the Seventh Circuit to evaluate materiality as part of the required determination. The regulation continues to require that the evidence is also material, which renders the requirements duplicative when applying the existing Seventh Circuit precedent.

Teresa F., 2019 U.S. Dist. LEXIS 113380, at *25. In other words, to the extent § 404.970(a)(5) seeks to draw a distinction between a legal determination (in the first clause) and a discretionary one (in the second), the language is redundant. The second clause ("there is a reasonable probability that the additional evidence would change the outcome of the decision") basically restates the definition of the term "material" which appears in the first clause. If the Council says, as it did here, that the new "evidence does not show a reasonable probability that it would change the outcome of the decision," is this a legal determination of materiality or a discretionary weighing of the evidence?

District courts within this circuit have differed over whether review is available, under the revised regulation, when the AC uses such language in the denial order. Compare Colleen C. v. Saul, No. 18 C 1838, 2019 U.S. Dist. LEXIS 143562, at *6-7 (N.D. Ill. Aug. 23, 2019) (interpreting this language to mean the AC rejected the new evidence as non-qualifying); and Ford v. Berryhill, No. 17-cv-544-wmc, 2019 U.S. Dist. LEXIS 170445, at *29 (W.D. Wis. June 4, 2019) (same); with Jandt v. Saul, No. 18-C-737, 2019 U.S. Dist. LEXIS 158642, at *13 (E.D. Wis. Sept. 18, 2019) (finding denial using this language discretionary and unreviewable); see also Patrica Kay M. v. Comm'r of Soc. Sec., No. 19-cv-065-DGW, 2019 U.S. Dist. LEXIS 143843, at *13-14 (S.D. Ill. Aug. 23, 2019) (finding the language ambiguous but declining review where the Council did not state it was rejecting the evidence under § 404.970(c)). In

6

Teresa F., the court found:

> the Seventh Circuit's past distinction unworkable as applied to the revised regulation. The Court would have jurisdiction to review the Appeals Council's determination that evidence was not material but would lack jurisdiction to review an Appeals Council's finding that the evidence did not show a reasonable probability of changing the outcome of the decision. As applied, there is no substantive difference between those separate requirements. Accordingly, the Court declines to avoid—based on a lack of jurisdiction—an evaluation of whether the newly submitted evidence would have had a reasonable probability of changing the outcome of the decision. Consistent with the Seventh Circuit's precedents above, including Nelson, the Court will reach the merits as to whether the evidence was material.

2019 U.S. Dist. LEXIS 113380, at *27.

## II. DISCUSSION

I will reach the merits on the materiality issue in this case. First, allowing review in close cases, such as this one, is consistent with the general principles set forth by the Seventh Circuit. Second, the language of the order at issue here, while ambiguous, supports review. Third, given the nature of the new evidence, materiality review in this case will not require an extensive appraisal of the overall record.

### A. General Principles of AC Review

The Seventh Circuit has suggested that courts "proceed with particular caution in analyzing whether the Appeals Council deemed [additional evidence] 'new and material' as [a claimant's] ability to obtain review of this crucial evidence hinges solely on that distinction." Stepp, 795 F.3d at 722 n.3. This is so because, unlike some other circuits, which allow the district court to consider the additional evidence in reviewing the ALJ's decision, the Seventh Circuit holds that evidence the AC "deemed new and material but inadequate to require reversal must be excluded from the record before the district court in its review of the ALJ's

7

decision." Id.; see also Eads v. Sec'y of Health & Human Servs., 983 F.2d 815, 817 (7th Cir. 1993) (noting that the correctness of the ALJ's "decision depends on the evidence that was before him," and he "cannot be faulted for having failed to weigh evidence never presented to him").

Further limiting a claimant's ability to obtain review of such materials, the Seventh Circuit has held that evidence submitted to the AC does not qualify as "new" for purposes of possible remand under 42 U.S.C. § 405(g), sentence six.[4] Stepp, 795 F.3d at 726 n.8; see also DeGrazio v. Colvin, 558 Fed. Appx. 649, 652 (7th Cir. 2014) ("The evidence that the Commissioner characterized as 'new' in her motion—the audiometric report that confirmed DeGrazio's hearing loss—was not new for purposes of sentence six because it already had been presented to the Appeals Council."). Thus, on a finding that the AC accepted the additional evidence as qualifying, the court could not review that evidence for purposes of a sentence four or a sentence six remand.[5]

Finally, the Seventh Circuit has suggested that ambiguous statements from the Council should be construed in favor of review. See Farrell, 692 F.3d at 771; see also McFadden v. Berryhill, No. 15-CV-1268, 2017 U.S. Dist. LEXIS 217509, at *15 (E.D. Wis. Feb. 22, 2017),

---

[4] The methods by which a district court may remand a social security case are set forth in sentence four and sentence six of 42 U.S.C. § 405(g). Under sentence four, the court may remand the case for further proceedings after affirming, reversing, or modifying the Commissioner's decision; a sentence four remand constitutes a final decision on the merits of the case. Under sentence six, conversely, the district court does not rule on the merits but rather retains jurisdiction over the case and remands to allow the agency to consider new, material evidence and/or to reconstruct the record; once that process is complete, the matter returns to the district court, if necessary, for a decision on the merits. Acevedo v. Barnhart, 474 F. Supp. 2d 1001, 1004 (E.D. Wis. 2007).

[5] Plaintiff also makes a sentence six argument here (Pl.'s Br. at 12), but such a remand is not available because her additional evidence was submitted to the AC.

8

aff'd, 721 Fed. Appx. 501 (7th Cir. 2081).  This is consistent with another important principle of judicial review—that neither the court nor the Commissioner's lawyers may fill in the gaps of an ambiguous decision.  See, e.g., Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002).  While the AC is free to deny review without explaining its reasoning, the court should not absent explanation presume that the Council considered the evidence presented to it and dispense with its own review.  See Stepp, 795 F.3d at 725 n.7 (reminding the Commissioner that, in all fairness to the party appealing the ALJ's decision, the AC should articulate its reasoning, and indicating that if it did so much of the confusion relating to the identification of evidence that the Council considered might be avoided).[6]

Significantly, a determination that the AC rejected the evidence as non-qualifying does not necessarily mean the claimant gets a remand.  See, e.g., Teresa F., 2019 U.S. Dist. LEXIS 113380, at *27-28 (finding that the AC did not err in finding the evidence non-material, as it was not substantially different from the evidence before the ALJ).  It simply means that she receives judicial review of the materiality issue, with a chance at remand if the court finds the evidence sufficiently important.

**B.    The AC Order Here**

As indicated, the AC rejected the article as "not material because it is not relevant to your claim for disability."  (Tr. at 2).  Regarding the new medical evidence, the AC stated that "this evidence does not show a reasonable probability that it would change the outcome of the

---

[6]The Commissioner argues that the new regulation removes the ambiguity identified by the Seventh Circuit.  (Def.'s Br. at 17 n.2.)  For the reasons stated above, I cannot agree.

9

decision." (Tr. at 2.)[7] The use of different language for these two categories of evidence might suggest that the article was rejected as non-qualifying, while the treatment records and report were found qualifying but insufficiently weighty to warrant review as a discretionary matter. On the other hand, the language used regarding the medical evidence simply restates the Seventh Circuit's definition of the term "material"; it thus provides little help in discerning the basis for denial. Moreover, in both Stepp and Farrell the court construed similar language to permit review. Stepp, 795 F.3d at 721 ("The Appeals Council summarily denied Stepp's application for review, explaining that the 'additional evidence' she presented 'd[id] not provide a basis for changing the [ALJ]'s decision.'"); Farrell, 692 F.3d at 771 ("Here, the Appeals Council's decision says that it 'considered . . . the additional evidence . . . [and] found that this information does not provide a basis for changing the Administrative Law Judge's decision.'").

Two omissions from the Council's order provide additional support for review. First, unlike in Perkins, where the AC specifically addressed the content and persuasiveness of the additional medical records, Stepp, 795 F.3d at 722-23, here the Council said nothing about the contents of the medical evidence. Second, the AC stated: "We did not exhibit this evidence." (Tr. at 2.) The agency's Hearings, Appeals, and Litigation Law ("HALLEX")[8] manual indicates that when the Council finds the additional evidence to be "qualifying," it will exhibit that evidence; non-qualifying evidence, on the other hand, is not exhibited. See Stepp, 795 F.3d at 724 n.6; Brown, 2015 U.S. Dist. LEXIS 81093, at *37-38. This suggests that the additional evidence was rejected as non-qualifying in the present case.

---

[7]Plaintiff does not argue that the Council erred in rejecting the Cohen article, and I do not further discuss it.

[8]https://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-20.html.

10

## C. The Nature of the New Evidence

Finally, there is little danger that reviewing the Council's order here will place the court in the position of front-line fact-finder. Indeed, this case is indistinguishable from Farrell. In that case, the Seventh Circuit stated:

> We find the Appeals Council's determination that Farrell's evidence was not "new and material" to be erroneous. It is undisputed that Dr. Loyd's diagnosis was "new" to the administrative record at the time of Farrell's application to the Appeals Council. Its materiality is also, in our view, beyond question: the ALJ's decision unequivocally rests in part on the determination that "there is no evidence that [a fibromyalgia] diagnosis has been confirmed." Farrell's new evidence fills in that evidentiary gap by providing exactly that confirmation. And this diagnosis, confirmed in December 2008, "relates to the period on or before the date of the administrative law judge hearing decision" (November 2008) as required by 20 C.F.R. § 404.970(b). It builds on the allusions to possible fibromyalgia in Dr. Beyer's reports from 2005 and 2006. Dr. Loyd's diagnosis was "new and material" evidence that the Appeals Council improperly failed to consider.

692 F.3d at 771.

Here, the ALJ wrote:

> The claimant testified that she has fibromyalgia, [and] in 2014, Dr. Wilson, a rheumatologist, indicated that the claimant's chronic myofascial and tendonitis pain could be fibromyalgia. In addition to the diagnosis from a medically acceptable source, Social Security Ruling (SSR) 12-2p specifies that a diagnosis alone does not establish fibromyalgia as a medically determinable impairment. The evidence must also show evidence of a history of widespread pain that has persisted for at least twelve months; at least eleven positive tender points found bilaterally on the body and above and below the waist on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded (SSR 12-2p). In this case, Dr. Wilson's notes did not include a tender point examination and Dr. Wilson indicated that she was not going to request any additional evidence at that time. The next mentions of fibromyalgia were from Gellings, PAC and Brady, LPN, who are not medically acceptable sources. There [is] no examination evidence that Ms. Gellings or Ms. Brady performed tender point analysis or additional testing to rule out other disorders. The record as a whole does not support a finding that fibromyalgia is a medically determinable impairment, as required by the Regulations and SSR 12-2p.

11

(Tr. at 255, internal record citations omitted.)[9]

The report from Dr. Wilson submitted to the Council fills the gaps identified by the ALJ. Dr. Wilson is a rheumatologist, a medical doctor and thus an "acceptable medical source" under the applicable regulation, see 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"),[10] in the applicable specialty, see Sarchet, 78 F.3d at 307 ("Fibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist."). Dr. Wilson indicated that plaintiff meets the American College of Rheumatology criteria for fibromyalgia, with symptoms of multiple tender points, non-restorative sleep, chronic fatigue, morning stiffness, numbness and tingling, Sicca symptoms,[11] and depression. (Tr. at 11.) Thus, as in Farrell, the report confirms the diagnosis that had merely been suggested in Dr. Wilson's records before the ALJ. (See Tr. at 577, 581, 609.)[12] In the report, Dr. Wilson also

---

[9] At the hearing, plaintiff testified that Dr. Wilson and Ms. Gellings told her she had fibromyalgia. The ALJ stated that he did not see a thorough tender point analysis in the records. (Tr. at 280.)

[10] "For claims filed after March 27, 2017, a physician's assistant may be an acceptable medical source for ailments within his or her licensed scope of practice." Bombard v. Berryhill, No. 18-cv-231-LM, 2019 U.S. Dist. LEXIS 38245, at *14 n.2 (D.N.H. Mar. 11, 2019) (citing 20 C.F.R. § 404.1502(a)(8)). However, plaintiff filed her application in 2015. (Tr. at 412.)

[11] "Dry eyes and dry mouth are collectively described as sicca symptoms. . . . An important cause of severe sicca symptoms is Sjögren's syndrome (SS), an autoimmune chronic inflammatory disease[.]" https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3396280/. "The sicca complex (dry eyes and mouth) is also commonly observed in fibromyalgia[.]" https://www.ncbi.nlm.nih.gov/pubmed/10406256.

[12] On August 6, 2014, Dr. Wilson noted: "Chronic myofascial and tendonitic pain which could be fibromyalgia, for now will hold off on 'pushing' any further medication." (Tr. at 577.) Dr. Wilson ordered additional lab work at that time, presumably to rule out other conditions. (Tr. at 577.) On December 3, 2014, Dr. Wilson stated: "Chronic myofascial and tendonitic pain which could be fibromyalgia. The knee pain could be early OA given her obesity and increased risk for same." (Tr at 581.) Dr. Wilson further noted that labs were unremarkable. (Tr. at 580.) On October 22, 2015, Dr. Wilson noted: "Widespread pain – some component of fibromyalgia,

12

endorsed significant limitations in walking, standing, sitting, and lifting (Tr. at 12-13), with "good" and "bad" days resulting in about two absences per month (Tr. at 14). A person with such limitations would almost certainly be unable to perform the jobs upon which the ALJ relied in denying this claim. (See Tr. at 260-62, 308.) Finally, Dr. Wilson indicated that these symptoms and limitations applied since November 2013 (Tr. at 14), prior to the ALJ's decision issued in January 2018 (Tr. at 249), indeed, prior to the alleged onset of disability in June 2015 (Tr. at 254, 414).[13]

While plaintiff primarily relies on the report from Dr. Wilson, the additional treatment records contain notes from Ms. Gellings (e.g., Tr. at 109-11, 11/10/16 note), which could change the ALJ's analysis of her opinions (see Tr. at 260, noting that the most recent treatment notes from Gellings in the record were from 2015).[14] The medical record before the ALJ was

---

but she also has degenerative, mechanical/structural issues in the hips and low back." (Tr. at 609.) At that time, Dr. Wilson started plaintiff on Lyrica (Tr. at 610), a medication commonly prescribed for fibromyalgia. https://www.drugs.com/lyrica.html. In June 2015, Ms. Gellings and Merrietta Brady, LPN, diagnosed fibromyalgia syndrome and chronic low back pain, prescribing Cymbalta (Tr. 585-86, 601-02), which is also used to treat fibromyalgia, https://www.drugs.com/cymbalta.html, and in October 2015, Gellings listed fibromyalgia syndrome on plaintiff's "active problem list" (Tr. at 605). As the ALJ noted, however, Brady and Gellings are not acceptable medical sources under the applicable regulation.

[13]The Commissioner makes no argument that plaintiff lacked "good cause" for failure to submit these records sooner. (See Tr. at 550-51, explaining that the treatment facility failed to transmit some of the records on plaintiff's pre-hearing request.) Nor does the Commissioner contest that the evidence is "new." See Perkins, 107 F.3d at 1296 (stating that evidence is "new" if it was not in existence or available to the claimant at the time of the administrative proceeding).

[14]Gellings provided two opinions. On October 12, 2015, she wrote: "[Plaintiff] is unable to work due to low back pain and right sciatica with severe limitations in balance and range of motion. She is unable to perform bending forward, twisting, reaching overhead, climbing stairs or lifting anything over 15 lbs. This will probably be a life long problem for [plaintiff]." (Tr. at 608.) On November 17, 2017, Gellings completed a checkbox report listing a diagnosis of degenerative joint disease with disc protrusion. (Tr. at 651.) She further indicated that plaintiff

13

rather sparse as these cases go. (Tr. at 554-661.) It appears that the treating medical facility failed to transmit, on plaintiff's pre-hearing request, more than 200 pages of records. (Tr. at 15-248, 550-51.) The ALJ in discounting plaintiff's statements noted a significant gap in her treatment. (Tr. at 258.) That gap, too, may be filled by the additional evidence.

The Commissioner defends the AC's materiality determination on two grounds. First, the Commissioner notes that a diagnosis alone says nothing about the severity of a condition, and that the existence of a fibromyalgia diagnosis here does not mean the condition caused symptoms that affected plaintiff's ability to work. (Def.'s Br. at 17.) As indicated above, however, Dr. Wilson included in her report significant limitations based on the fibromyalgia diagnosis. Fibromyalgia may not usually be disabling, see Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998), but that does not mean it may be overlooked.

Second, the Commissioner notes that the ALJ considered the evidence in the record relating to plaintiff's pain complaints and associated limitations, which he contrasted with exam findings of full strength, mostly normal gait, and normal coordination, and plaintiff's conservative course of treatment. (Tr. at 257-59.) The Commissioner contends that consideration of Dr. Wilson's post-hearing opinion attributing plaintiff's symptoms to fibromyalgia, rather than other impairments, would not change the outcome.[15] (Def.'s Br. at

---

could sit and stand/walk about two hours in an eight-hour workday, lift no more than 10 pounds, would be absent more than three times per month, and could not sustain a full-time job on a regular basis (just 20 hours per week). (Tr. at 653-54.)

[15]The Commissioner makes a similar argument in response to plaintiff's contention that the ALJ erred in his evaluation of fibromyalgia. The Commissioner essentially argues that any error regarding fibromyalgia was harmless because the ALJ properly considered all of the evidence related to plaintiff's pain and other symptoms, regardless of the specific cause. (Def.'s Br. at 8.)

18.) However, the ALJ based this evaluation on a truncated record. Moreover, if on remand the ALJ finds that plaintiff's fibromyalgia is a severe medically determinable impairment, it may change his view of plaintiff's statements regarding her subjective symptoms and resulting limitations. See Brown v. Berryhill, No.: 2:18-CV-64-JEM, 2019 U.S. Dist. LEXIS 20423, at *10 (N.D. Ind. Feb. 7, 2019) ("The ALJ has not explained how evidence of normal range of motion, gait, motor strength, and results from neurological examinations are inconsistent with significant limitations due to fibromyalgia[.]"); Austin v. Berryhill, No. 17-cv-3113, 2018 U.S. Dist. LEXIS 152852, at *38 (C.D. Ill. Aug. 9, 2018) ("Persons with fibromyalgia also may only receive conservative treatment because more involved treatment is not available."), adopted, 2018 U.S. Dist. LEXIS 152631 (C.D. Ill. Sept. 6, 2018). In sum, I cannot assume that the ALJ would have reached the same result had he considered the additional evidence. See Thomas v. Colvin, 826 F.3d 953, 959 (7th Cir. 2016); see also Farrell, 692 F.3d at 772 (declining to find error regarding fibromyalgia harmless).

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the Commissioner's decision is reversed, and the matter is remanded to the agency for further proceedings consistent with this opinion. The clerk shall enter judgment accordingly.

On remand, the agency should reconsider plaintiff's alleged fibromyalgia, based on the entire record, under both the 1990 and 2010 American College of Rheumatology diagnostic criteria. See SSR 12-2p, 2012 SSR LEXIS 1, at *4-9. It appears that the ALJ in his decision focused on the 1990 criteria, which place particular emphasis on tender points. Id. at *5-6. The agency should also reconsider Ms. Gellings's reports based on the entire record. The

15

agency should further reconsider plaintiff's statements regarding the intensity, persistence, and limiting effects of her alleged symptoms based on the entire record and on consideration of the factors set forth in SSR 16-3p, 2016 SSR LEXIS 4, at *18-19, keeping in mind that, in some situations, pain alone can be disabling, e.g., Carradine v. Barnhart, 360 F.3d 751, 753 (7th Cir. 2004), and that a claimant's statements regarding the severity of her symptoms may not be disregarded solely because they are not substantiated by objective medical evidence, e.g., Moore v. Colvin, 743 F.3d 1118, 1125 (7th Cir. 2014). Nor should a claimant's statements be discredited because of her conservative course of treatment absent consideration of any explanations offered for not seeking more aggressive treatments. Akin v. Berryhill, 887 F.3d 314, 318 (7th Cir. 2018). Finally, the aggregate effect of all of plaintiff's impairments, including her obesity, must be taken into account. See, e.g., Goins v. Colvin, 764 F.3d 677, 681 (7th Cir. 2014).

Dated at Milwaukee, Wisconsin this 15th day of October, 2019.

s/ Lynn Adelman
LYNN ADELMAN
District Judge